# UNITED STATES DISTRICT COURT
## FOR THE
### DISTRICT OF VERMONT

EDWARD COLOMB,                          :
                                        :
       Plaintiff,                   :
                                        :
       v.                           :   Case No. 2:10-cv-254
                                        :
ROMAN CATHOLIC DIOCESE OF               :
BURLINGTON, VERMONT, INC.,              :
                                        :
       Defendant.                   :
                                        :

## Memorandum Opinion and Order

Edward Colomb has brought suit against the Roman Catholic Diocese of Burlington, Vermont, Inc. ("the Diocese") seeking compensatory and exemplary damages for injuries he suffered as a result of childhood sexual abuse. The Diocese has moved for summary judgment on several grounds: 1) Colomb's suit is time-barred; 2) Colomb's suit offends the First Amendment's Free Exercise and Establishment clauses; 3) Vermont's statute of limitations for actions based on childhood sexual abuse violates the Due Process Clause of the Fourteenth Amendment; 4) the potential for disparate damage awards in childhood sexual abuse cases in Vermont violates the First and Fourteenth Amendments; and 5) imposing punitive damages is unwarranted and unconstitutional. The Diocese's motion for summary judgment, ECF No. 46, is **denied**.[1]

---

[1] The Diocese has also moved to strike an unauthorized response to its reply. The motion, ECF No. 54, is **granted**. Colomb's Motion for Permission to File Surreply Memorandum, ECF

**Factual Background**[2]

Colomb was abused in 1974 when he was 13 years old by Father Edward Paquette, a Roman Catholic priest of the Diocese. Although he has known all along about the abuse, he only recently learned that lawsuits had been filed against the Diocese, seeking to hold it responsible for the sexual abuse perpetrated by Paquette and other priests.

Vermont began investigating reports of priest abuse in 2002, the first lawsuit against the Diocese was filed in 2002, and the first press reports of sexual abuse by priests in Vermont emerged in 2002. Several cases have gone to trial; several cases have settled. Colomb cannot pinpoint a time when he connected his longstanding psychological and emotional difficulties with the abuse he suffered as a child.

Colomb filed his lawsuit against the Diocese on October 20, 2010, when he was 49 years old. His complaint alleges that the Diocese negligently hired, supervised, and retained Paquette; breached a fiduciary duty to Colomb; fostered an atmosphere in

_____

No. 55, is **denied.**

[2] In this narrative, the Court includes only facts material to the resolution of the motion for summary judgment, either undisputed or taken in the light most favorable to Colomb, as the nonmoving party. *See, e.g.*, *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 200, 201 (2d Cir. 2004) (looking "to the substantive law of the action to determine which facts are material," "credit[ing] the non-moving party's evidence and draw[ing] all justifiable inferences in favor of that party").

which child sexual abuse could and did take place; failed to provide treatment to victims of the abuse; failed to prevent the intentional infliction of harm; engaged in outrageous conduct that caused Colomb to suffer extreme emotional distress; and participated in a conspiracy to conceal and cover up child sexual abuse by employees of the Diocese.

Paquette and other priests were hired and retained by the Diocese despite known instances of sexual abuse in their histories. After Paquette was hired in 1972 the Diocese placed no restrictions on his duties, and he was assigned to a parish with a school. Paquette continued to molest children. When the pastor complained, the Diocese reassigned Paquette, but again placed no restrictions on his unsupervised interactions with children. A further reassignment resulted in his placement in a Burlington, Vermont parish with a school. Paquette repeatedly molested the altar boys of this parish. Although the pastor notified the Diocese in 1978, the Diocese did not notify the police, interview the victims or attempt to help them. Although local parents were irate, the Bishop remained determined to continue Paquette's assignment, although he restricted Paquette from training altar boys, and told him to avoid any activity that could be misinterpreted. The outcry was prolonged and widespread, however, and the Diocese eventually decided to terminate him. The Diocese did not refer the matter to law

enforcement, nor did it follow up with its parishioners or
Paquette's victims.

Paquette was not the only child molester among the Diocese's
priests.  Between 1963 and 2003 the Diocese received reports that
seven Diocesan employees had molested children.  The Diocese did
not report any of them for criminal prosecution; it did not tell
parents or children; and it did not immediately remove the
reported offenders from contact with children.  In some cases it
took years for the Diocese to take action to restrict these
employees from contact with children.  The Diocese repeatedly
covered up or minimized instances of sexual abuse by its priests.

## II.  Discussion

Summary judgment must be granted if the moving party "shows
that there is no genuine dispute as to any material fact and [it]
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  "It is the movant's burden to show that no genuine
factual dispute exists, . . . and all reasonable inferences must
be drawn in the non-movant's favor."  *Giannullo v. City of New
York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Adickes v. S.H.
Kress & Co.*, 398 U.S. 144, 157 (1970)).

The Court applies the substantive law of the state of
Vermont as well as its statute of limitations in this diversity
jurisdiction case.  *See Guaranty Trust Co. of N.Y. v. York*, 326

U.S. 99, 108–12 (1945); accord *Giordano v. Market America, Inc.*, 599 F.3d 87, 94 (2d Cir. 2010) (applying New York's substantive law and statute of limitations in case that arose in New York).

A.    **Statute of Limitations Defense**

Section 522(a) of Title 12 of Vermont Statutes Annotated provides:

> A civil action brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within six years of the act alleged to have caused the injury or condition, or six years of the time the victim discovered that the injury or condition was caused by that act, whichever period expires later. The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury.

Vt. Stat. Ann. tit. 12, § 522(a).

The statute was enacted in 1990, and applies retroactively "only to cases where 'the act of sexual abuse or the discovery that the injury or condition was caused by the act of sexual abuse occurred on or after July 1, 1984.'" *Earle v. State*, 743 A.2d 1101, 1104 (Vt. 1999) (quoting 1989, No. 292 (Adj. Sess.), § 4(b)). Given that the sexual abuse occurred in 1974, the statute applies retroactively only if Colomb discovered on or after July 1, 1984 that his injuries were caused by the sexual abuse he suffered. The Diocese apparently does not contest the applicability of the retroactivity provision. *See id.* at 1107 n.4 (distinguishing between the date of discovery under the retroactivity provision and the date of accrual under the statute

of limitations).

Summary judgment is appropriate on statute of limitations grounds only if as a matter of law Colomb knew or should have known more than six years before he filed suit that his "injury or condition" was caused by the sexual abuse. *See Turner v. Roman Catholic Diocese of Burlington, Vt.*, 2009 VT 101, ¶ 43, 987 A.2d 960, 978.

The Diocese argues that Colomb knew that he had been abused by Paquette prior to October 20, 2004, and knew or should have known that Paquette had abused others prior to that date. Assuming that this is the case however, the Diocese fails to produce evidence that Colomb knew or should have known prior to October 20, 2004 that his injuries were caused by the abuse.

The Vermont Supreme Court has emphasized that the Vermont Legislature distinguished "between the acts of abuse themselves and the injuries that result years later for many victims of childhood sexual abuse, . . . in recognition of the unique nature of childhood sexual assault." *Earle v. State*, 743 A.2d 1101, 1106 (Vt. 1999). In his deposition Colomb stated that he suffers from lack of trust and anxiety, that he had abused drugs and alcohol but stopped drinking about eight years ago, that in the previous year he thought he had a "moment of clarity" when he realized that his alcohol and drug abuse could be related to the sexual abuse he had suffered, but that he wasn't sure when he

made a connection between his emotional or psychological issues and the sexual abuse. Colomb Dep. 101:14-102:25 (June 14, 2011).

On this record, it is impossible to rule as a matter of law that prior to October 20, 2004, Colomb made or should have made the connection between his longstanding psychological issues and the sexual abuse he suffered as a child. The matter will be for the jury to resolve. *See Turner*, 2009 VT 101, ¶ 48, 987 A.2d at 979-80; *see also Lillicrap v. Martin*, 591 A.2d 41, 46 (Vt. 1989) (holding that the statute of limitations does not begin to run until a plaintiff has or should have discovered *both* the injury and the fact that it may have been caused by the defendant's negligence or other breach of duty).

## B.   First Amendment Defense

The Diocese argues that

> continued exposure to damages including punitive
> damages makes it highly likely that the tort system
> will put the Diocese out of existence.  If the
> protections of the First Amendment are to mean
> anything, the government should not be allowed to shut
> the doors of a church and put it up for sale.

Def.'s Mot. for Summ. J. 21.  It argues further that "[c]ontinued application of the law of torts in this case will likely end the ability of the Catholic faith to function in this State consistent with its mission and purpose." *Id.* at 23.  The argument is utterly speculative.  *If* a jury finds for the plaintiff and *if* it awards damages, and *if* the award is substantial, then the Diocese *may* cease to exist, and the

Catholic faith *may* not be able to function properly.  To the extent that the Diocese's First Amendment challenge to a punitive damages award has any merit, it is premature.

### C.    Due Process Defense

The Diocese argues that Vermont's statute of limitations for childhood sexual abuse deprives it of due process by exposing it to litigation of a claim that arises out of events that took place thirty-six years ago.  This Court rejected this argument nearly twenty years ago.  *Barquin v. Roman Catholic Diocese of Burlington, Vt.*, 839 F. Supp. 275, 280-81 (D. Vt. 1993).  The Diocese fails even to cite this decision; it has offered no reasoned basis for the Court to revisit its ruling.

### D.    Inconsistent Damages Awards Defense

The Diocese argues that because damages in civil suits in "Paquette cases" involving conduct similar to the allegations in Colomb's complaint have varied widely, the imposition of civil damages in this case would violate the First and Fourteenth Amendments.  It complains that the jury charges on punitive damages have not been consistent from case to case, and that the Diocese's financial exposure through this unpredictability is "considerably more severe than any criminal sanctions."

Setting aside the debatable point whether the loss of liberty or the loss of property constitutes the greater deprivation, to the extent that the Diocese is arguing for tort

8

reform, its arguments are better directed to the Vermont legislature. A federal court, sitting in diversity, has no power to revise state law. *See, e.g.*, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern."). The Vermont Supreme Court has recently clarified that a punitive damages award requires a showing of "wrongful conduct that is outrageously reprehensible" and "malice, defined variously as bad motive, ill will, personal spite or hatred, reckless disregard, and the like." *Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc.*, 2010 VT 33, ¶ 18, 996 A.2d 1167, 1173. If this case comes to trial, and if the evidence warrants it, and if an instruction on punitive damages is requested, this Court will instruct the jury in conformity with Vermont law. Should a jury in this case render an award that the Diocese deems excessive, this Court will, upon motion, "'determine whether the jury's verdict is within the confines set by state law.'" *Consorti v. Armstrong World Indus., Inc.*, 103 F.3d 2, 4 (2d Cir. 1996) (per curiam) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 437 (1996)).

The Court can discern no cognizable First or Fourteenth

Amendment claim in the Diocese's concern that multiple instances of sexual abuse by one of its priests has exposed it to multiple lawsuits and multiple trials, in which Vermont juries hearing similar but certainly not identical evidence have reached different conclusions about an appropriate award of damages.

### E.  Inappropriateness of Punitive Damages Defense

The Diocese argues that section 522(a) permits the unconstitutional retroactive imposition of punitive damages; would unfairly punish the innocent members of the Diocese; would serve no deterrent purpose; and is unnecessary.

The Diocese quotes *Landgraf v. USI Film Products*, 511 U.S. 244, 281 (1994), as noting that "[t]he very labels given 'punitive' or 'exemplary' damages, as well as the rationales that support them, demonstrate that they share key characteristics of criminal sanctions.  Retroactive imposition of punitive damages would raise a serious constitutional question." *Landgraf* involved provisions of the Civil Rights Act of 1991 which created a right to recover compensatory and punitive damages for certain violations of Title VII, but did not express a clear intention concerning its applicability to cases pending on appeal when the statute was enacted. *See id.* at 247.

The Vermont legislature created a six-year statute of limitations for civil actions based on childhood sexual abuse, and provided that the statute would have a six-year period of

retroactive applicability to conduct or to discovery that the
injury was caused by the conduct.  *See Earle*, 743 A.2d at 1104.
No new cause of action was created, nor did the statute provide
any new or additional remedies; individuals who had suffered
sexual abuse as minors had a cause of action against the
responsible parties and could seek compensatory and punitive
damages both before and after the enactment.  The Vermont
legislature thus did not "impose" punitive damages retroactively,
and it did clearly express its intent to reach back six years to
permit the filing of certain suits that might otherwise be time-
barred.  *Landgraf* and its admonition is therefore inapposite to
this case.

The Diocese argues that the common law rule excepting
municipalities from an award of punitive damages should extend to
it as a charitable, religious organization that cannot act
maliciously, except through its officials.  The rationale for
exempting municipal corporations from an award of punitive
damages does not logically extend to private religious
organizations.  As the Vermont Supreme Court has observed:

> The twin aims behind punitive damages—punishment and
> deterrence—would not be met if they were levied against
> a municipal corporation for the malicious and wrongful
> acts of its officers.  Rather than exclusively
> targeting the wrongdoers, such an award would punish
> all of the town's taxpayers. . . . [W]hile the public
> is benefited by the exaction of such damages against a
> malicious, willful or reckless wrongdoer, the benefit
> does not follow when the public itself is penalized for
> the acts of its agents over which it is able to

11

exercise but little direct control.
*In re Town Highway No. 20*, 2012 VT 17, ¶ 69, 45 A.3d 54, 79.
(quotation marks and citation omitted).  Whatever the merits of a
rule against assessing punitive damages against a private
religious organization, support for such a rule is not available
by analogy to public municipal corporations, and such a rule has
not been incorporated into the common law of Vermont.

The Diocese argues further that litigation of other sexual
abuse cases has taken an economic, emotional and psychological
toll on the church, its leaders and innocent members of the
church community.  The Court has no reason to doubt these
assertions; nevertheless they have no bearing on whether it will
be appropriate on the facts of this case to consider whether an
award of punitive damages is warranted.

Finally, the Diocese asserts that punitive damages would be
unnecessary because it has "taken steps to put its house in
order."  Def.'s Mot. for Summ. J. 38.  These actions have
included conducting background checks and screening of church
personnel who work with minors, and implementing programs
designed to provide a safe environment for children.  These
facts, if proven, may be admissible as mitigating evidence
relevant to punitive damages.  They do not create an absence of
genuine dispute of fact on the question whether Diocesan
officials acted outrageously reprehensibly, with malice, as

defined by Vermont courts.

Colomb's evidence may or may not be sufficient to warrant charging the jury on punitive damages. The Diocese, however, has not sustained its burden of showing an absence of genuine dispute as to the material facts relevant to this issue.

**F.    Excessive Government Entanglement Defense**

The Diocese argues that the First Amendment precludes a suit against it for negligent hiring or supervision. The First Amendment's Free Exercise Clause "provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .'" *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). "[G]overnment actions that 'substantially burden the exercise of sincerely held religious beliefs' [are prohibited] unless those actions are narrowly tailored to advance a compelling government interest." *Fortress Bible Church v. Feiner*, ___ F.3d ___, No. 10-3634-cv, 2012 WL 4335158 at *9 (2d Cir. Sept. 24, 2012) (quoting *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002)). However, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi*, 508 U.S. at 531.

It is accordingly "well established that a generally

13

applicable law that does not target religious practices does not violate the Free Exercise Clause." *Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006). The torts of negligent hiring and negligent supervision do not target religious practices, and the Diocese does not contend that Vermont recognizes these torts in order to burden religion. No matter how onerous the Diocese finds it to defend against a lawsuit claiming that it was negligent in hiring and supervising Paquette, neither Vermont tort law on negligent hiring and supervision nor this particular lawsuit presumes to dictate or condemn any particular religious practices.

The Diocese does not specify what religious practices or freedoms it feels are infringed; it states generally and conclusorily that the lawsuit "implicates church governance and administration," that the process of adjudication "affect[s] governance of church affairs" and "the church's relationship with its membership and its priests," and a negligent supervision lawsuit "will infringe on the Catholic Church's religious beliefs used to formulate its supervisory policy." Def.'s Mot. for Summ. J. 39, 40. The Diocese appears merely to be arguing that it cannot be sued for negligent hiring or supervision because it is a religious institution. This Court adopts the Vermont Supreme Court's ruling in *Turner* on the identical point:

> Defendant does not argue that the common law of
> negligence is something other than a neutral law of

14

> general applicability or that it is directed
> specifically towards a religious belief or practice of
> defendant.  Nor has defendant identified a specific
> doctrine or practice that will be burdened if
> plaintiff's suit goes forward.  We do not believe
> defendant's generalized assertion that requiring it to
> hire and supervise priests in a nonnegligent manner
> would constitute undue interference in church
> governance.

*Turner*, 2009 VT 101, ¶ 28, 987 A.2d at 973.

### G.  Eighth Amendment Defense

The Diocese argues that imposition of punitive damages would constitute an excessive fine and cruel and unusual punishment, in violation of the Eighth Amendment.  The Eighth Amendment's excessive fines clause does not apply to awards of punitive damages in cases between private parties.  *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 260 (1989).  To the extent that the Diocese claims that an award of punitive damages would violate the Due Process Clause of the Fourteenth Amendment, *see* Def.'s Mot. for Summ. J. 40-41, the argument is premature, given that no jury has awarded Colomb any damages whatsoever.  *Cf. Browning-Ferris*, 492 U.S. at 276-77 ("[A] jury award may not be upheld [under the Due Process Clause] if it was the product of bias or passion, or if it was reached in proceedings lacking the basic elements of fundamental fairness.").

The Diocese does not explain the connection between the potential for a punitive damages award and the Eighth Amendment's

prohibition against cruel and unusual punishment, and the Court discerns none. *See, e.g.*, *Alexander v. United States*, 509 U.S. 544, 557 (1993) ("[T]he Cruel and Unusual Punishments Clause . . . is concerned with matters such as the duration or conditions of confinement . . . .").

**H.    Ex Post Facto Clause Defense**

The Diocese argues that the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution bars the imposition of punitive damages in this case, citing *Calder v. Bull*, 3 U.S. 386, 390 (1798). The *Calder* Court distinguished between laws generally having a retrospective effect and ex post facto laws. Ex post facto laws create or aggravate a crime; or increase a punishment or change the rules of evidence for the purpose of conviction of a crime. *Id.* at 391; *see Collins v. Youngblood*, 497 U.S. 37, 41 (1990) ("[T]he constitutional prohibition of *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them."); *see also United States v. Kumar*, 617 F.3d 612, 639 (2d Cir. 2010) (stating the original understanding of the Ex Post Facto Clause as: "Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."), *cert. denied*, 131 S. Ct. 2931 (2011).

The Diocese offers no authority for the proposition that the availability of punitive damages upon proof of commission of a

civil tort, retroactive or no, has anything to do with the Constitution's prohibition against ex post facto laws. Moreover, the conduct at issue here was a common law tort both before and after the enactment of Section 522 of Title 12 of Vermont Statutes Annotated.

## III. Conclusion

For the above-stated reasons, the Diocese's motion for summary judgment, ECF No. 46, is **denied.** The Diocese's Motion to Strike Plaintiff's Supplemental Memorandum Filed in Opposition to Motion for Summary Judgment, ECF No. 54, is **granted.** Colomb's Motion for Permission to File Surreply Memorandum, ECF No. 55, is **denied.**

Dated at Burlington, in the District of Vermont, this 28th day of September, 2012.


/s/ William K. Sessions III
William K. Sessions III
District Court Judge